Mollohan v. Patton.

---

No. 23,321.

Nora C. Mollohan, *Appellee*, v. H. H. Patton (et al.), *Appellant*.

SYLLABUS BY THE COURT.

1. Oil and Gas Lease—*Action for Forfeiture of Lease and Damages.* Where an oil and gas lease requires as a condition to its remaining in force that work upon a well shall begin by a certain date and be diligently prosecuted, and drilling is begun on time, the fact that other wells in the neighborhood are subsequently brought in dry does not of itself relieve the lessee from the obligation to continue its prosecution.

2. Same—*Notification of Forfeiture—Demand for Discharge of Lease on the Record.* The requirement of section 4995 of the General Statutes of 1915 that a demand for the discharge of a lease on the record shall be made at least twenty days before an action is brought for damages for a failure to execute and record a surrender thereof is sufficiently complied with by the incorporation of such a demand in the notification of forfeiture provided for in section 4992.

3. Same—*Elements of Damages for Refusing to Discharge the Lease of Record After Forfeiture and Demand.* Where in an action against the lessee for refusing to execute and record a surrender of a forfeited lease it is determined that he violated his duty to the lessor in such refusal, he may be held liable for damages resulting from the property being tied up during the litigation.

4. Same—*Award of Damages Sustained.* The evidence is held to sustain the award of damages made.

5. SAME—*Attorney Fee Not Unreasonable.* The attorney's fee allowed is held not to be unreasonable.

Appeal from Marion district court; ROSWELL L. KING, judge. Opinion filed December 10, 1921. Affirmed.

*R. L. Holmes, C. G. Yankey, W. E. Holmes,* and *D. W. Eaton,* all of Wichita, for the appellant.

*W. H. Carpenter,* and *W. R. Carpenter,* both of Marion, for the appellee.

The opinion of the court was delivered by

MASON, J.: On February 15, 1919, Nora C. Mollohan (then Nora C. Rodner) executed an oil and gas lease upon a forty-acre tract which passed by assignment to H. H. Patton. On February 27, 1920, she brought an action against Patton to have the lease declared forfeited, and to recover damages and attorney's fees for his refusal to release it of record. She recovered judgment for $10,000 damages and $1,000 attorney's fee, and Patton appeals.

1. The defendant claims that the plaintiff, upon the admitted facts, was not entitled to a forfeiture because there was no breach of the terms of the lease on his part. The lease provided that a well should be begun before March 1, 1919 (which date was by agreement changed to March 16, 1919), and completed to a depth of at least 2,750 feet unless it proved unprofitable at a less depth. A well was begun on time and drilled to a depth of 2,600 feet by May 27, 1919, when a new agreement was entered into waiving further drilling on that well, but providing that a new well should be begun by October 1, 1919, and diligently prosecuted. Before that date the new well was begun near the southwest corner of the lease, but work on it was abandoned a few days later, and this is relied upon as the ground of forfeiture. The defendant undertakes to justify the abandonment on the ground that it was obviously futile to continue the drilling because of these facts, which were admitted: This well was an offset to one on other land belonging to the plaintiff which had just proved to be a dry hole, and another well on the plaintiff's land across the 40 acres on the north had also just come in dry. The language of the supplemental contract between the plaintiff and the defendant, so far as necessary to the consideration of this question, is as follows:

"It is agreed between said parties that the second party shall execute a release and surrender of all rights under the aforesaid oil and gas lease and deposit the same in The First National Bank of Peabody, Kansas, in escrow. That said release and surrender so deposited in The First National Bank of

Peabody, Kans., shall by said bank be delivered to the first parties unless the second party shall commence another well on said premises on or before Oct. 1, 1919, and within thirty days after any producing well is obtained which is an offset to the leased premises and shall prosecute the work of drilling such well diligently. In case the second party shall, on or before Oct. 1, 1919, and within thirty days after a producing well is obtained off-setting the leased premises, commence a second well on said premises, then and in that event, the failure of the second party to complete said first well to a depth of twenty-seven hundred fifty feet as provided in said lease shall be waived by the first parties."

In behalf of the defendant it is argued that the commencement of the well was all that was necessary to save the lease from forfeiture; that if an agreement on his part to finish the well is to be implied, then there is also an implication that he was to be relieved from this obligation by the neighboring wells proving dry. This argument fails to take sufficient account of the provision that the instrument of release was to be delivered unless the work on the well should not only be begun within the time set but should also be prosecuted diligently. It cannot be said as a matter of law that the failure of two wells in the neighborhood made it certain that the well the defendant had begun would be valueless. No other way than by the diligent prosecution of this well had been provided by which the lease might be continued in force. In the absence of some agreement to the contrary the defendant's rights with respect thereto were lost when he failed to carry out this provision of the contract.

2. The action was brought under the statute authorizing damages to be recovered where the lessee refuses upon demand to discharge of record an oil and gas lease which has become forfeited. (Gen. Stat. 1915, §§ 4992, 4994, 4995.) The defendant urges that no sufficient demand was made to enable the plaintiff to invoke the statute. In the original act (Laws 1909, ch. 179) the first section required that when a lease became forfeited the lessee should within sixty days cause it to be released of record; the second section authorized the recovery of damages and an attorney's fee for a refusal to do so; the third section required a demand for such a release to be made at least twenty days before an action should be brought. In 1915 the first section was amended by adding provisions that if the lessee shall fail to discharge a forfeited lease within the time fixed the lessor may serve upon him a written notice declaring the forfeiture, giving notice that he would file an affidavit thereof, and demanding that a surrender of the lease be executed and

recorded within twenty days; that if the lessee then takes no step an affidavit of forfeiture filed by the lessor shall have practically the effect of a recorded release, but if the lessee gives notice to the register of deeds that he still claims the lease to be in force, "the owner of the land shall be entitled to the remedies now provided by law for the cancellation of such disputed lease." (Gen. Stat. 1915, § 4992.)

Here the plaintiff gave a notice such as that described in the amendment, including a demand that the defendant execute and record a surrender of the lease, but did not make any separate demand for such release. The defendant argues that the demand incorporated in the notice was without effect save for the purposes of the amended first section of the act, and that a separate demand was necessary as a preliminary to bringing the action; that the original first section required the discharge of a forfeited lease, while the amendment seeks to lessen the severity of such absolute requirement. We regard the demand for release made in pursuance of the amended section as a sufficient compliance with the provision of the last section of the act requiring such a demand to be made twenty days before an action is brought. It serves every purpose of the statute and advises the lessee as fully of the lessor's claim as though it were written on a separate piece of paper and had no other function than to lay ground for a suit. The statute does not require that the lessee be notified that he is to be sued—merely that at least twenty days before suit is brought a demand for a release be made. The addition to the original section does not relieve the lessee from the duty of causing the record to show that a lease has been forfeited where such is the case, but provides additional machinery for carrying out the original purpose, by requiring affirmative action on the part of the lessee to prevent the discharge of the challenged lease. Such has been the effect given to the statute heretofore. (*Cole v. Butler,* 103 Kan. 419, 173 Pac. 978; *Elliott v. Oil Co.,* 106 Kan. 248, 187 Pac. 692.)

3. There was evidence, which the court must be deemed to have accepted, that after the action was begun but before the trial was had a number of wells north of the lease in controversy were brought in dry, and that since then there had been no market value of leases. The defendant urges that he should not be held liable for damages that accrued while he was asserting his rights in a court of justice. It is now determined that the defendant owed the plaintiff a duty

to discharge the lease of record when the demand was made. By violating that duty (so the trial court must be regarded as having found) he prevented a sale of the lease until conditions had arisen which rendered a sale impossible. That the market value of an oil and gas lease may be quickly influenced by the drilling of wells in the neighborhood and by their proving productive or dry is common knowledge. The depreciation in value during the time the defendant wrongfully prevented a sale appears to be a just measure of damage in accordance with the usual rules, notwithstanding the pendency of the litigation.

4. The defendant further urges that there was no substantial evidence on which to base an award of $10,000 damages. The plaintiff's husband testified that for more than three years he had been engaged in the business of selling oil and gas leases; that he had a judgment as to what the property in question could have been leased for; that if the land had been free—that is if the defendant's lease had been discharged—he thought he could have leased it for as much as $500 an acre. That the statement was given as the belief of the witness rather than in more positive form of course affects only the weight to be given it. It was responsive to the issue. There was no other evidence offered on the subject, and we regard this as sufficient to sustain the judgment.

5. It is contended that the attorney's fee allowed was excessive. In view of all the circumstances, including the amount involved, this court cannot say that it was unreasonable.

The judgment is affirmed.

---

OPINION DENYING A REHEARING.

(Filed March 11, 1922.)

SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Forfeited—Refusal to Discharge of Record—Special Damages.* It is held that in a statutory action for the refusal to discharge upon the record an oil and gas lease alleged to have been forfeited, an objection that special damages were not pleaded is not available on review because not made in the trial court, and the evidence is sufficient to show damages of that character.

2. SAME—*Defense of Good Faith in Refusal to Discharge of Record Not Available on Review.* The fact that the defendant in such an action undertakes to justify his refusal to discharge the record of a lease is not conclusive proof that he acted under an honest belief that his conduct was lawful. A defense of good faith, unless made in the trial court, is not available on review.

3. SAME—*Constitutionality of Statute Raised Too Late for Review.* Consideration of the constitutionality of the statute referred to is refused because not presented until after the decision of the case.

The opinion of the court was delivered by

MASON, J.: 1. This case was brought under the statute (Gen. Stat. 1915, §§ 4992, 4994 and 4995) making the lessee liable for a refusal upon demand to discharge of record an oil and gas lease that has been forfeited. The plaintiff recovered and the judgment was affirmed. In a motion for a rehearing the defendant urges that in accordance with the rule in actions for slander of title special damages were required to be pleaded and proved in order to sustain a recovery, and that a reversal should be ordered because the plaintiff did not plead or prove that a sale of the lease was lost through the failure of the defendant to clear the record. The plaintiff's husband testified that if it had been free (that is, if the release had been entered), he thought he could have leased it (the land) for at least $500 per acre. We regard this as open to the meaning that he could and would have made a sale for that price if it had not been for the record—that a sale was prevented by that means. No details were given, but they could have been developed if desired by cross-examination. The generality of statement in the pleading and proof not having been objected to upon the ground now urged, either in the trial court or in this court until the filing of the motion for a rehearing, is not now available to the defendant as an objection to the judgment.

2. In the motion for a rehearing the defendant also for the first time urges that if the statute is so interpreted as to allow a recovery against a lessee for a failure to discharge a lease which in the ensuing litigation he claims to be still valid, it is obnoxious to various provisions of the federal and state constitutions, inasmuch as without substantial reason it places burdens on one litigant not borne by the other. At this stage of the proceedings we can hardly be expected to enter into a very close examination of a newly suggested constitutional question, but we think the following considerations sufficient to dispose of the matter so far as concerns the present case:

The statute here involved is quite analogous to those rendering a mortgagee liable to damages and attorney's fees for a failure to release the mortgage upon full payment. It is quite generally held, although there is some difference of judicial opinion as to the exist-

ence and extent of the rule, that in an action under such a statute it is a sufficient defense to show that the refusal was due to an honest, although mistaken, belief that the mortgage had not been fully paid. (*Parkhurst v. National Bank,* 53 Kan. 136, 35 Pac. 1116; 27 Cyc. 1428.) Where an action is brought upon such a statute or one of a similar nature the fact that the defendant unsuccessfully undertakes to justify his conduct in refusing to perform the duty required of him cannot be accepted as conclusive proof of his good faith; otherwise the statute would be of little practical value. Here the defendant might have presented to the trial court the issue of his honest belief in the continued validity of the lease, asked an instruction that this belief if established would constitute a defense, and complained on appeal of the ruling if such charge had been refused. But these steps were not taken, and we are unable to see how the contention respecting the defendant's purpose can now be made available to him.

3. With the statute so interpreted as to make good faith a defense the constitutional questions do not seem of such character as to justify us in reopening the case for their consideration.

The motion for a rehearing is overruled.