(619 P.2d 1174)
No. 51,460

LAWLY A. NELSON, *Appellee,* v. GEORGE HEDGES, *et al., Defendants,* DONALD B. McGUIRE, *et al., Appellants.*

Petition for review denied December 19, 1980.

Opinion filed November 26, 1980.

*John J. Gillett,* of Neodesha, and *Laurel D. McClellan* of Lorentz and McClellan, of Fredonia, for the appellants.

*Rex A. Lafferty,* of Fredonia, for the appellee.

Before FOTH, C.J., REES, J., and HARMAN, C.J. Retired, sitting by designation.

HARMAN, C.J. Retired: This appeal arises from an action brought to have an oil and gas lease declared void ab initio, for land damages, statutory damages and attorney fees. The principal issues involve sufficiency of evidence to support award of damages against the defendants who have appealed, and the propriety of statutory damages and award of attorney fees.

Walfred E. Nelson and his wife, plaintiff Lawly A. Nelson, owned and occupied as a homestead eighty acres in Wilson County. On April 25, 1977, Mr. Nelson executed an oil and gas lease on the property in favor of George Hedges, d/b/a Crude Producers. His wife was never asked to sign this lease, nor did she.

Shortly before the primary three-month term of the lease was to expire, Hedges began drilling operations. Some damage was done to an old gas well which supplied fuel for residential heating. By this time defendants-appellants, the Greers and the McGuires,

had acquired from Hedges a partial working interest in the Nelson lease. About October 31, 1977, during a rainy period, men with a bulldozer and heavy oil field equipment entered upon the Nelson farm and crossed their hay meadow in order to get to adjoining Vance Cooper property on which there was an oil and gas lease, known as the Cooper lease. Deep ruts were cut and a hay meadow on the Nelson land was damaged. Mr. Nelson died November 19, 1977.

Mrs. Nelson filed her petition January 26, 1979, naming as defendants George Hedges, Jack Haldiman, David Haldiman, Donald B. McGuire, Alma McGuire, George J. Portek, Helen J. Portek, David H. Greer and Mary D. Greer. She pleaded four separately numbered "causes of action," seeking judgment declaring the lease void ab initio, for land damages in two counts, for release of the pretended lease, for statutory damages and attorney fees, and for damages for slander of title.

Personal service was never obtained on defendant George Hedges. Only four defendants answered and appeared in the action, Mr. McGuire and his wife Alma McGuire, and Mr. Greer and his wife Mary D. Greer. No pretrial conference was held. Prior to the evidentiary hearing, the answering defendants admitted the lease was void ab initio. Trial to the court resulted in a judgment against all named defendants for $600 resulting from damage to the gas well, $1,000 for hay loss, $100 statutory damages, and $1,000 attorney fees for plaintiff's attorney. The trial court specifically declined to award land damages because of its dissatisfaction with the evidence presented on that issue.

The defendants McGuires and Greers have appealed from the entire judgment; however, they do not brief or present any issue as to the $600 award because of damage to the gas well, and upon oral argument they stated they do not question that part of the judgment. It must be and is affirmed.

On appeal, defendants offer two reasons why the $1,000 award for loss of hay cannot be sustained. Each is meritorious. First, the evidence showed that it was plaintiff's tenant, and not plaintiff, who suffered this loss. The tenant paid an annual cash rent. Plaintiff had no interest, proportional or otherwise, in the hay crop. This may be further illustrated by the fact that the $1,000 award denominated hay loss was summarized by the tenant's testimony to consist of these items: loss of hay crop—$360; tenant's services in rounding up cattle which had strayed through

a gate left open—$100; weight loss on tenant's strayed cattle—$180; damage to teeth of tenant's hay baler and reloading hay because of ruts—$250; and unseen wear and tear on equipment—$110. Plaintiff was not shown to have sustained loss in any of these items. Prior to trial, plaintiff filed an itemized statement of her damages. None of the above items was mentioned in it.

Second, defendants assert, and correctly so, that defendants McGuire and Greer had nothing to do with the October 31, 1977, incident when the bulldozer and other equipment crossed the Nelson farm to get to the adjoining land which was the subject of the Cooper lease. The evidence showed that the Cooper lease was owned and operated by George Hedges, George Portek and Crude Oil Producers. The persons who drove the heavy equipment over plaintiff's land were never identified by name. The only evidence on the subject, coming from several witnesses, was that this damage was done by the operators of the Cooper lease. None of the defendants McGuire and Greer had any interest in the Cooper lease by way of ownership, agency, partnership or anything else, nor did any of them have any interest in Crude Oil Producers, the principal owners of the lease, the latter being owned by defendants Hedges and Portek. The acts complained of here had nothing whatsoever to do with the operation of the Nelson lease nor was there any benefit to it. Consequently, the judgment for $1,000 for hay loss must be set aside.

Defendants assail the award of statutory damages and attorney fees from two standpoints. They assert no demand for release of the lease was ever made upon them so as to authorize an award of these items. A look at the statutes is in order. K.S.A. 55-201 provides in pertinent part:

"When any oil, gas or other mineral lease heretofore or hereafter given on land situated in any county of Kansas and recorded therein shall become forfeited it shall be the duty of the lessee, his or her successors or assigns . . . to have such lease surrendered in writing . . . without cost to the owner [of the leased land] . . . ."

The statute further provides a procedure whereby an owner of leased land may notice up the lessee and by affidavit filed with the register of deeds either cancel the effect of a recorded lease where the lessee fails to respond or, should the lessee affirmatively claim a continuing interest, set the stage for an action to cancel the lease, with the lessor being allowed certain remedies if successful. K.S.A. 55-202 supplies these remedies:

"Should the owner of such lease neglect or refuse to execute a release as provided by this act, then the owner of the leased premises may sue in any court of competent jurisdiction to obtain such release, and the owner may also recover in such action of the lessee, his or her successors or assigns, the sum of one hundred dollars as damages, and all costs, together with a reasonable attorney's fee for preparing and prosecuting the suit  .  .  .  ."

The other relevant statute is K.S.A. 55-206, which provides:

"At least twenty days before bringing the action provided for in this act, the owner of the leased land, either by himself or herself or by his or her agent or attorney, shall demand of the holder of the lease (if such demand by ordinary diligence can be made in this state) that said lease be released of record. Such demand may be either written or oral. When written, a letter-press or carbon or written copy thereof, when shown to be such, may be used as evidence in any court with the same force and effect as the original."

It is not required that one seeking forfeiture, statutory damages and attorney fees under the foregoing shall follow the notice procedures provided in 55-201, but compliance with the demand prescribed in 55-206 is a condition precedent to bringing such an action in court. See *Erne v. Broiles,* 173 Kan. 882, 252 P.2d 612 (1953); *Elliott v. Oil Co.,* 106 Kan. 248, 187 Pac. 692 (1920).

The matter of demand was put in issue by the pleadings. The evidence at trial revealed that Mr. Greer talked with plaintiff at the farm after the damage had been done; also, Mr. Greer and Mr. McGuire conversed with plaintiff's attorney two or three times at his office. Additionally, Mr. Greer wrote plaintiff a letter to which her attorney responded and the attorney wrote Mr. Greer another letter dated November 8, 1978.

At trial plaintiff and Mr. Greer testified and copies of the correspondence were received in evidence. There was nothing showing that any demand for release of the lease had ever been made. The most that could be said of it all was that plaintiff's attorney orally told Mr. Greer and Mr. McGuire that their lease was "questionable"; counsel's complete response to Mr. Greer's letter to plaintiff was: "Mrs. Nelson thinks you are in the same sack with Mr. Hedges and will have no further transactions with you people"; and counsel's November 8, 1978, letter to Greer stated that plaintiff had received a tax assessment on the lease, there had been no production, and her position was that the lease had expired by its own terms and was void to begin with since it was homestead property. Counsel's letter concluded with this statement:

"Mrs. Nelson will no doubt file an action for personal damages for slander of title. If she does this, on my recommendation, we will send you the necessary notice."

Demand for release could easily have been made on the Greers and McGuires but there simply is no showing this was done. Hence, the judgment for statutory damages and attorney fees cannot be sustained. Defendants' other contention on this point need not be considered.

The judgment against defendants Donald B. McGuire, Alma McGuire, David H. Greer and Mary D. Greer for $600 for damage to the gas well is affirmed. The judgments against them for $1,000 for hay loss, $100 statutory damages, and $1,000 for attorney fees for plaintiff's attorney are reversed.